# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| RANDY SMITH, | : | Case No. 3:17-cv-285 |
| Plaintiff, | : | Judge Thomas M. Rose |
| v. | : | |
| RELIASTAR LIFE INSURANCE COMPANY, INC., | : | |
| Defendant. | : | |

## ENTRY AND ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD (DOC. 5), DENYING PLAINTIFF'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD (DOC. 11), AND TERMINATING CASE

This case is before the Court on the Motions for Judgment on the Administrative Record (Docs. 5, 11) filed by Defendant ReliaStar Life Insurance Company, Inc. ("ReliaStar") and Plaintiff Randy Smith ("Smith"), respectively. Smith brought this action under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* (ERISA), for review of the denial of disability benefits under his employer-provided life insurance plan. Smith seeks reversal of the denial of benefits and an order remanding this matter for payment of benefits. ReliaStar, the issuer of the plan, seeks a judgment upholding the denial of benefits. Smith and ReliaStar agree on the standard of review and their Motions are fully briefed. (Docs. 10, 12, 13.) As discussed below, the Court finds that ReliaStar's denial of benefits was neither arbitrary nor capricious and therefore

**GRANTS** ReliaStar's Motion (Doc. 5) and **DENIES** Smith's Motion (Doc. 11) for Judgment on the Administrative Record.

## I. BACKGROUND

The Court's review is limited to the administrative record at the time that ReliaStar's ERISA review committee issued its decision. Accordingly, the Court "may not consider new evidence or look beyond the record that was before the plan administrator." *Wilkins v. Baptist Mem'l Healthcare Sys., Inc.*, 150 F.3d 609, 615 (6th Cir. 1998); *see also Crews v. Central States*, 788 F.2d 332 (6th Cir. 1986). The following facts are taken from that administrative record.

Smith was employed as a Coater Team Operator at Appvion, Inc. ("Appvion"). (Doc. 5-2 at 2.) Smith participated in the Appvion, Inc. Group Life Insurance Plan ("the Plan"), which was issued by ReliaStar. (Doc. 5-3 at 3.) The Plan provides qualified employees Basic Life Insurance and Accidental Death and Dismemberment Insurance ("Basic Life Insurance") and a Total and Permanent Disability Income Benefit ("Benefit") equal to the value of the Basic Life Insurance in force on the date that the employee becomes totally disabled. (*Id*. at 4.)

The Plan provides that the Benefit will be paid if the employee is permanently disabled. (*Id*. at 9.) To qualify for the Benefit, the employee must meet the following three conditions:

> You are insured for this benefit on the date you became totally disabled.
> You become permanently disabled before age 65.
> ReliaStar Life receives proof, within 12 months or as soon as reasonably possible after the date you become totally disabled, that you are permanently disabled.

2

(*Id*.) The Plan defines permanently disabled as a "total disability, which is expected to continue for 10 years or for the rest of the disabled person's expected lifetime, whichever is shorter." (*Id*. at 19.) The Plan defines totally disabled as "your inability, due to sickness or accidental injury, to work at or perform the material and substantial duties of any job suited to your education, training or experience." (*Id*.)

On October 24, 2016, Smith filed a Waiver of Premium Disability Claim ("Smith's Claim"). (Doc. 5-2 at 4–5.) Smith identified his conditions as chronic back and body pain, osteoarthritis, heart trouble, and fibromyalgia. (*Id*. at 4.) His last date of work was April 19, 2016. (*Id*. at 5.) Smith noted that he had been approved for disability payments under the Social Security Administration. (*Id*.) Smith attached a form titled Attending Physician's Statement of Disability, which was completed by Smith's treating physician, Dr. O'Connell. (*Id*. at 8–10.) On the form, in response to the question, "Is patient totally disabled FOR ALL OCCUPATIONS?" Dr. O'Connell responded, "No." (*Id*. at 8.) Conversely, when asked, "Is patient totally disabled FOR PATIENT'S REGULAR OCCUPATION?" Dr. O'Connell responded, "Yes." (*Id*.) Dr. O'Connell noted that Smith would need a nonphysical job. (*Id*.) Dr. O'Connell indicated that Smith's back problems were permanent. (*Id*. at 9.)

On November 9, 2016, ReliaStar sent a letter to Smith notifying him that he was not eligible for the Benefit. (Doc. 5-4 at 1.) ReliaStar stated:

> Under the terms of this policy, you may be eligible for this benefit if you are permanent[ly] and totally disabled. The policy states that Permanent Disability is "expected to continue for 10 years or for the rest of the disabled person's expected lifetime, whichever is shorter". Total Disability is, "your

3

inability, due to sickness or accidental injury, to work at or perform the material and substantial duties of any job suited to your education, training or experience".

According to the medical information contained in the Attending Physician's Statement you are not totally disabled for all occupations. Because you could work in some capacity, you do not meet the definition of total disability as contained in this policy. Therefore, you are not eligible for the Total and Permanent Disability Income Benefit and we must deny your claim.

(*Id.*)

On November 21, 2016, Smith appealed the denial of his Claim for the Benefit. (Doc. 5-2 at 12–13.) His appeal attached medical records, including Smith's treatment history with Dr. O'Connell, a psychologist, a cardiologist, and a pain management physician. (*Id.* at 14–268.)

On December 12, 2016, ReliaStar notified Smith that it had forwarded his appeal to its ERISA review committee. (*Id.* at 269.) On February 1, 2017, the ERISA review committee determined that Smith was not eligible for the Benefit and upheld ReliaStar's original claim decision. (*Id.* at 275.) The ERISA review committee stated:

Though your doctor completed the Attending Physician's Statement of Disability and certified that you are currently disabled from performing your own occupation, the policy defines total disability as the inability to perform ANY occupation. Furthermore, permanent disability is defined as a total disability from performing any occupation that is expected to continue for a period of 10 years.

Because the medical information does not support that you are unable to work in any occupation, and because it does not support that any inability to work is expected to continue for a period of 10 years, you do not meet the definition of permanently disabled as contained in this policy. Therefore, you are not eligible for the Total and Permanent Disability Income Benefit and we must uphold our initial decision to deny your claim.

(*Id.* at 276.)

4

Smith brought this action and alleges that ReliaStar wrongfully denied his benefits under 29 U.S.C. § 1132. (Doc. 3 at 4–5.) He seeks, among other things, to recover $50,000, the amount that he would be entitled to if he were qualified under the terms of the Plan. (*Id*. at 6.)

## II.     LEGAL STANDARD

The parties agree that the arbitrary and capricious standard of review applies because the Plan gives ReliaStar "final discretionary authority to determine all questions of eligibility and status and to interpret and construe the terms of" the Plan. (Doc. 5-3 at 22, ¶ 8; *see also Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).)

The arbitrary and capricious standard "is the least demanding form of judicial review of administrative action." *Williams v. Int'l Paper Co.*, 227 F.3d 706, 712 (6th Cir. 2000). It is not, however, a "rubber stamp" of the plan administrator's decision. *Cox v. Standard Ins. Co.*, 585 F.3d 295, 305 (6th Cir. 2009). When applying this standard, the Court "must decide whether the plan administrator's decision was 'rational in light of the plan's provision.'" *Id*. (quoting *Daniel v. Eaton Corp.*, 839 F.2d 263, 267 (6th Cir. 1988)). "When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Davis v. Ky. Fin. Cos. Ret. Plan*, 887 F.2d 689, 693 (6th Cir. 1989) (quoting *Pokratz v. Jones Dairy Farm*, 771 F.2d 206, 209 (7th Cir. 1985)). The Sixth Circuit has held that a plan administrator's decision must be upheld under the arbitrary and capricious standard if it is supported by substantial evidence and "the result of a deliberate, principled reasoning process." *Shaw v. AT&T*, 795 F.3d 538,

547 (6th Cir. 2015), quoting *DeLisle v. Sun Life Assur. Co. of Canada*, 558 F.3d 440, 444 (6th Cir.2009) (internal quotes omitted).

### III. ANALYSIS

Under the Plan, Smith had to meet three conditions to qualify for the Benefit: (1) be insured for this benefit on the date you became totally disabled, (2) become permanently disabled before age 65, and (3) provide ReliaStar proof, within 12 months or as soon as reasonably possible after the date he became totally disabled, that he was permanently disabled. (Doc. 5-3 at 9.) The Plan defines totally disabled as the employee's "inability, due to sickness or accidental injury, to work at or perform the material and substantial duties of any job" suited to the employee's "education, training, or experience." (*Id.* at 19.) The definition of permanent disability encompasses the definition of total disability, and is defined as a "total disability, which is expected to continue for 10 years or for the rest of the disabled person's expected lifetime, whichever is shorter." (*Id.*)

ReliaStar asserts that it denied Smith's Claim because he failed to prove that he was unable to perform "the material and substantial duties of any job" suited to his education, training, or experience. ReliaStar's notification letter to Smith referenced Dr. O'Connell's Attending Physician Statement, in which he indicated that, although Smith was unable to perform his regular occupation, he was not totally disabled for all occupations. (Doc. 5-2 at 8.) ReliaStar compares this case to *Vanderklok v. Provident Life & Accident Insurance Co.*, 956 F.2d 610 (6th Cir. 1992).

6

In *Vanderklok*, the plaintiff filed a claim for disability benefits under an employer-sponsored life insurance plan. *Id.* at 612. The plaintiff's treating physician submitted a report, at the insurance carrier's request, stating that plaintiff would never be capable of returning to his regular job as a manual laborer, but would be able to engage in some type of compensable work. *Id.* Plaintiff was referred to a second physician, who opined that plaintiff was totally disabled for his usual occupation, although he could not say whether the disability would be permanent. *Id.* at 612-13. The second physician further stated that he would not object to the plaintiff returning to work that did not require "heavy pushing, pulling, repetitive lifting, or work out at arm reaches or over chest level." *Id.* at 613. The insurance carrier subsequently denied the plaintiff's claim based on its finding that he was not total and permanently disabled under the plan. *Id.*

The Sixth Circuit rejected the plaintiff's argument that he needed to prove only that he was totally and permanently disabled from performing his current occupation in order to qualify for benefits. *Id.* at 614. The policy at issue was a life insurance policy, not a disability insurance policy, that required total and permanent disability to accelerate payments on the life insurance policy in the form of disability benefits. As a result, the plaintiff was required to show that he was unable to engage in any occupation to qualify for benefits. *Id.* The Sixth Circuit clarified, however, that any occupation should not be construed to include "nominal employment, such as selling peanuts or pencils which would only yield a pittance." *Id.* at 615. Instead, a claim of total disability must be based on the claimant's ability to pursue "gainful employment in light of all the circumstances." *Id.*, citing *Torix v. Ball Corp.*, 862 F.2d 1428, 1430 (10th Cir. 1988).

7

The Sixth Circuit then turned to a claim overlooked by the district court, namely that the insurance carrier failed to give plaintiff timely written notice of the denial of benefits in violation of the plan and ERISA, 29 U.S.C. § 1133(1). *Id.* at 615. The Sixth Circuit found that the notice was both untimely and substantively defective because it failed to provide "the specific reason or reasons for denial and the specific reference to pertinent plan provisions on which the denial [was] based." *Id.* The carrier's notice had stated:

> We regret that the claim does not qualify under the total and permanent disability benefits provision of the policy, because the proof submitted does not establish that the insured is totally and permanently disabled from all work for the remainder of his life. We will be happy to review any additional medical information which Mr. Vanderklok may wish to submit.

*Id.* at 616. The Sixth Circuit reversed the denial of benefits and remanded the case to the district court with instructions to reconsider the issue of disability after the plaintiff had been given the opportunity to submit additional evidence. *Id.* at 619.

Here, ReliaStar argues that, like the plan in *Vanderklok*, the Plan is a life insurance policy, not a disability insurance policy, that requires Smith to prove his permanent and total disability generally—not just for his then current occupation. Because Smith's physician indicated that he was not totally disabled, argues ReliaStar, he was not entitled to the Benefit. Unlike the notice in *Vanderklok*, ReliaStar argues that its notice to Smith was not defective because it adequately explained the basis for the denial, the portion of the record upon which it relied, and how Smith could supplement and appeal the decision.

Smith argues that ReliaStar's notice was deficient because it did not sufficiently explain the basis for the denial or identify the specific type of employment available to him. Smith specifically faults ReliaStar for failing to discuss Smith's limitations and their impact on his ability to work.

Section 1133 of ERISA requires employee benefit plans to, among other things, provide adequate notice in writing to any participant whose claim has been denied, "setting forth the specific reasons for such denial." (Doc. 12 at 2, quoting 29 U.S.C. § 1133(1).) The regulations promulgated under that section provide, in relevant part, that the written notification for a denial of a life insurance benefit must set forth, "in a manner calculated to be understood by the claimant":

> (i) The specific reason or reasons for the adverse determination;
>
> (ii) Reference to the specific plan provisions on which the determination is based;
>
> (iii) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary; [and]
>
> (iv) A description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review;

29 C.F.R. § 2560.503-1(g)(i)-(iv).

ReliaStar notes that, in the 25 years since *Vanderklok* was decided, the Sixth Circuit has adopted the substantial compliance rule for ERISA notice requirements. *Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 436 (6th Cir. 2006). Under this rule, the court asks whether the plan administrator's notice provided a sufficiently clear understanding of its

9

decision to permit effective review. *Id.* (citing *Brehmer v. Inland Steel Indus. Pension Plan*, 114 F.3d 656, 662 (7th Cir. 1997)). "To decide whether there is substantial compliance, this Court considers all communications between an administrator and plan participant to determine whether the information provided was sufficient under the circumstances." *Id.* ReliaStar argues that its notice met this standard. The Court agrees.

As required by the regulations, ReliaStar clearly set forth the reason for its denial: "According to the medical information contained in the Attending Physician's Statement you are not totally disabled for all occupations. Because you could work in some capacity, you do not meet the definition of total disability as contained in this policy." (Doc. 5-4 at 1.) ReliaStar also identified the specific benefit at issue—the Total and Permanent Disability Income Benefit, explained that Smith must qualify as permanently and totally disabled to qualify for the Benefit, and provided the definitions relevant to its determination that he did not qualify. (*Id.*) ReliaStar also directed Smith to the evidence upon which its decision was based—the Attending Physician's Statement. (*See id.*) Finally, ReliaStar provided a summary of Smith's ERISA rights, including his right to appeal the decision. (*Id.* at 1–2.) Although ReliaStar's notice was succinct, it contained the details necessary to permit a fair and effective review of the decision.

Smith's argument that ReliaStar's decision was not the result of a deliberate and principled reasoning process also fails. Smith accuses ReliaStar of selectively relying on only Dr. O'Connell's statement that Smith could perform some work, while ignoring other medical evidence that, according to Smith, precludes any employment. (Doc. 10 at 5.) This is not a case, however, where the plan administrator independently weighed

conflicting medical evidence and then cherry-picked the evidence that supported its decision. *Cf. Metropolitan Life Insurance Co. v. Conger*, 474 F.3d 258, 265 (6th Cir. 2007) (insurance company acted arbitrarily and capriciously when it "focused on slivers of information that could be read to support a denial of coverage and ignored—without explanation—a wealth of evidence that directly contradicted its basis for denying coverage."). ReliaStar did not weigh the medical evidence and come to a conclusion at odds with Smith's physicians. Instead, it relied on Dr. O'Connell's review of the medical record and his determination that Smith was capable of working in some occupation. It was reasonable for ReliaStar to rely on Dr. O'Connell, as Smith's treating physician, for guidance in its own review of the record.

Smith argues that additional materials were submitted on appeal that proved his inability to engage in any gainful employment. None of the cited evidence, however, directly contradicts Dr. O'Connell's work-related findings or would render ReliaStar's reliance on those findings unreasonable. *Cf. Glenn v. MetLife*, 461 F.3d 660, 671 (6th Cir. 2006) (criticizing plan administrator's reliance on treating physician's indication that claimant was capable of sedentary work when his subsequent letters clearly stated that claimant was not capable of returning to any type of work). Smith even concedes that "[r]ead as a whole, the record demonstrates that [he] is limited to, at most, sedentary work with the need for significant breaks throughout the day to combat his pain and fatigue related limitations." (Doc. 13 at 7.) The ability to perform sedentary work, albeit subject to restrictions, does not qualify as totally disabled under the Plan. Smith goes on to conclude that these limitations, combined with his need for frequent breaks and

absenteeism, "likely erodes any potential for gainful work." (*Id*. at 7.) Smith's conclusion might be reasonable, but so was ReliaStar's decision. It certainly cannot be said that ReliaStar's decision was arbitrary and capricious based on the administrative record.

Smith also argues that ReliaStar's decision was flawed because it did not request any additional records from him or order him to undergo further examination. Smith has not shown that ReliaStar had the right to order a physical examination, even if it had deemed that necessary. ReliaStar cites Plan provisions that reserve that right only with respect to a pending claim for AD&D insurance, not the life insurance benefit at issue in this case. (Doc. 5-2 at 18.) Moreover, ReliaStar's decision not to seek additional medical evidence is not suspect because, as previously discussed, the information in the record did not contradict Dr. O'Connell's opinion that Smith was capable of some work.

## IV. CONCLUSION

For the reasons above, the Court **GRANTS** ReliaStar's Motion for Judgment on the Administrative Record (Doc. 5). Smith's Motion for Judgment on the Administrative Record (Doc. 11) is **DENIED**. This case is terminated on the Court's docket.

**DONE** and **ORDERED** in Dayton, Ohio, this Thursday, May 10, 2018.

s/Thomas M. Rose
_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE
